United States District Court
Southern District of Texas
**ENTERED**
June 11, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MICHAEL ARCHIBALD | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:17–CV–00286 |
| | § | |
| VIRGINIA TRANSFORMER CORP. | § | |
| and CARAVELS, LLC d/b/a | § | |
| GEORGIA TRANSFORMER | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court is Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) ("Motion to Dismiss"). (Dkt. 14). All dispositive pretrial motions in this case have been referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 23). After reviewing the briefing and applicable law, the Court RECOMMENDS that the Motion to Dismiss be GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

Plaintiff Michael Archibald ("Archibald"), a Pearland, Texas resident, brings this lawsuit, alleging causes of action for breach of contract, fraud in the inducement, and negligent misrepresentation against his former employers, Defendants Virginia Transformer Corporation and Caravels, LLC d/b/a Georgia Transformer (collectively

"Defendants"). Defendants are leading manufacturers, providers, and servicers of power transformers.

Archibald's allegations are relatively simple and straightforward.    Archibald claims that in early 2017 Defendants hired a placement agency, Adecco Staffing, USA, ("Adecco"), to help fill the position of National Transportation Manager.    Adecco identified several possible candidates for the post, including Archibald.    Defendants interviewed Archibald several times and subsequently hired him as the National Transportation Manager.

Before Archibald started work, Defendants provided him an offer letter which included basic information concerning compensation, benefits, vacation time, and job expectations.   The offer letter noted that Archibald would initially work for three to five months at Defendants' facility in Pocatello, Idaho before relocating to work out of Defendants' Rincon, Georgia facility.   Archibald claims that Defendants represented to him "that they would keep him employed and would relocate him inducing him to sell his home in Pearland, Texas and cease earning equity in his home."   (Dkt. 9 at 11). Archibald signed the offer letter, put his Texas home on the market and, on June 24, 2017, began working for Defendants in Idaho.   Archibald considers the fully executed offer letter a binding and enforceable employment agreement.

On August 24, 2017, just 61 days into Archibald's employment, Defendants informed him that they were moving in a "different direction" and had decided to eliminate his position. (Dkt. 9 at 10).  He was terminated immediately.

Archibald alleges that Defendants owed Adecco a placement fee 90 days after the job placement. "Upon information and belief, the Defendants sought to avoid paying the placement fee by terminating Archibald and had intended to use Archibald's services just long enough to get work from him and then jettison him before having to pay Adecco." (Dkt. 9 at 11).

In short, Archibald claims that the employment agreement included a two-year term and Defendants breached the employment agreement by terminating him roughly two months after he started his employment. Archibald's fraud and negligent misrepresentation claims are based on the premise that Defendants misled Archibald into thinking his employment was for a two-year period, all the while intending to terminate him before 90 days so they could benefit from his work and avoid paying Adecco a placement fee. Defendants strongly deny these allegations and have moved to dismiss Archibald's lawsuit under Rule 12(b)(6) for failure to state a claim.

## II. RULE 12(B)(6) STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This pleading standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Under Rule 12(b)(6), a party may "move for dismissal for a failure to state a claim upon which relief can be granted." *Lemieux v. Am. Optical Corp.*, 712 F. App'x 409, 412 (5th Cir. 2018) (quotation marks omitted). "The complaint must be liberally construed in favor of the

3

plaintiff, and all facts pleaded in the complaint must be taken as true." *Lowrey v. Texas A&M Univ. Syst.*, 117 F.3d 242, 247 (5th Cir. 1997). Dismissal is appropriate "when a plaintiff fails to allege sufficient facts that, taken as true, state a claim that is plausible on its face." *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011). However, "[m]otions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quotation marks and citation omitted). A 12(b)(6) motion should not be granted "unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

On a motion to dismiss, the court's review is generally limited to the complaint and its proper attachments. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). However, courts may rely upon "'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Id.* (quoting *Tellabs, Inc., v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Documents "attache[d] to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quotation marks and citation omitted).

# III. DISCUSSION

## A.    BREACH OF CONTRACT

Archibald's first cause of action is for breach of contract.   He claims that Defendants breached the employment contract when they terminated his employment only 61 days after it began.   In response, Defendants argue that they did not breach any employment agreement because Archibald was an at-will employee and his employment was terminable at any time, by any party, with or without cause.

"For well over a century, the general rule in this State, as in most American jurisdictions, has been that absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery County Hosp. Dist. v. Brown*, 965 S.W. 2d 501, 502 (Tex. 1998) (collecting cases).   To modify the default at-will employment relationship, an employer must "unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances." *Midland Judicial Dist. Cmty. Supervision and Corrs. Dep't v. Jones*, 92 S.W.3d 486, 487 (Tex. 2002) (citation and internal quotation marks omitted).   Thus, to establish a wrongful termination claim based on a written contract of employment, Archibald must prove that his employment contract specifically limited Defendants' right to terminate him at will.   Put another way, Archibald must prove that Defendants expressly, clearly, and specifically agreed to modify his at-will status. *See Montgomery County Hosp. Dist.*, 965 S.W.2d at 503.

The question at the heart of this case is whether Archibald's employment with Defendants was for a fixed term or at-will.   The answer to that question hinges on

5

whether the employment agreement clearly and expressly limited Defendants' ability to discharge Archibald at any time for any reason.

In his response to the Motion to Dismiss, Archibald contends that the offer letter was an enforceable employment contract that required him to be employed for a minimum of two years. For proof that the employment agreement established a two-year fixed term, Archibald points to a provision of the employment agreement titled "Signing Bonus/Relocation Terms and Conditions." This provision provides as follows:

> **Signing Bonus/Relocation Terms & Conditions**
> In the event you resign or are separated for cause, as per the schedule below from your date of joining, you will be required to repay these amounts as follows:
> - 100% refund to the company if separated within 1st year of joining
> - 60% refund to the company if separated with in 2nd year of joining
> - Zero amount of the sign in bonus to be refunded to the company if separated after 2 years
> Should you resign or are separated within the periods stated above, you agree to allow the company to deduct any funds owed by you from any final paycheck and you agree to repay any remaining funds owed within 30 days of termination of employment.

(Dkt. 10 at 2). Archibald contends that this "provision clearly restricts the ability of the Defendants to terminate" him within two years. (Dkt. 18 at 5). In the Court's view, Archibald misses the mark.

The "Signing Bonus/Relocation Terms and Conditions" provision does not specifically or expressly limit Defendants' right to terminate Archibald at will. It merely addresses the amount, if any, Archibald is required to repay Defendants for his signing bonus/relocation expenses in the event he resigns or is separated for cause in less than one year, less than two years or more than two years after joining Defendants. This provision is notably silent when it comes to requiring Archibald to repay any amounts back to Defendants in the event he is terminated without cause. That means that Defendants can fire Archibald at any time without cause and Archibald is not obligated to

6

repay Defendants a cent. It is hard to understand how this provision can be read to limit Defendants' right to terminate Archibald within a two-year time frame.[1] Had the parties intended to create a two-year term of employment, the employment agreement could have expressly stated so. It did not. The construction and meaning of an unambiguous contract is a question of law. *See Ganske v. Spence*, 129 S.W.3d 701, 707 (Tex. App.— Waco 2004, no pet.). In construing the written agreement, the primary concern of the court is to ascertain the true intentions of the parties as expressed within the four corners of the instrument. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Because the employment agreement does not unequivocally indicate its intent to modify the at-will nature of Archibald's employment, the Court finds that Archibald is an at-will employee and his breach of employment contract claim fails as a matter of law. Accordingly, the Court recommends that Defendants' Motion to Dismiss be granted with respect to the breach of contract claim.

---

[1] Archibald relies on *Taggart v. L&W Supply Corp.*, No. 3:08-CV-1098-P, 2009 WL 10677301 (N.D. Tex. Aug. 6, 2009) to support his claim that the offer letter limited the ability of Defendants to discharge him in less than two years. *Taggart*, however, is readily distinguishable. Unlike the present case, *Taggart* involved an employment agreement that included (1) bonus payment schedules for three years; (2) a change-in-ownership provision that provided that the terms of the offer letter would remain in force "in the event of any ownership change ... during the first three years of employment;" and (3) a written statement in the offer letter by the company's Chief Operating Officer that read "I am confident you will substantially exceed $8,000,000 well before the three year period." *Id.* at *3. Given these multiple references to a three-year term, the *Taggart* court held that a fact-finder could reasonably conclude that the company "indicated a 'definite intent' to employ Taggert for a minimum period of three years." *Id.* These multiple references to a three-year fixed term in *Taggert* are markedly different from the present case, where there is no clear, express intent to modify Archibald's at-will status.

## B.    FRAUD IN THE INDUCEMENT AND NEGLIGENT MISREPRESENTATION

Archibald also asserts causes of action for fraud in the inducement and negligent misrepresentation. Specifically, Archibald claims that (1) Defendants falsely represented that he would be relocated for work to Georgia for continued employment; (2) Defendants knew this was false; (3) Defendants intended that Archibald rely on this promise; and (4) Archibald relied on the promise by signing the offer letter and selling his home in Texas to his detriment. Archibald further alleges that Defendants failed to disclose their true intention to fire him within 90 days of employment in order to avoid paying a placement fee to Adecco. In response, Defendants deny that they ever made such statements and further contend that Archibald fails to allege an actionable misrepresentation to support his fraudulent inducement and negligent misrepresentation claims because the alleged promises involve future behavior, rather than an existing fact.

Texas law is clear: to properly state a claim for fraud and negligent misrepresentation, Archibald must allege that Defendants made a false representation of fact. *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (fraud elements); *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (negligent misrepresentation elements). As Defendants correctly point out, the general rule is that a representation about a future event is merely an opinion or prediction, not an actionable misrepresentation. *See Cannedy v. Wells Fargo Bank, N.A.*, No. 4:16-CV-00046-ALM, 2016 WL 3946793, at *5 (E.D. Tex. June 28, 2016). However, "[a] promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made." *Formosa Plastics*

8

*Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47–48 (Tex. 1998) (citation omitted). "Thus, if the promise to do an act in the future was made with the intention, design, and purpose of deceiving, and with no intention of performing the act, there is actionable fraud." *Offshore Petroleum Divers, Inc. v. Cromp*, 952 S.W.2d 954, 956 (Tex. App.—Beaumont 1997, pet. denied) (citation omitted). *See also Schindler v. Austwell Farmers Co-op.*, 841 S.W.2d 853, 854 (Tex. 1992) ("For a promise of future performance to be the basis of actionable fraud, it must have been false at the time it was made.").

Here, Archibald alleges that, at the time Defendants reportedly made the misrepresentations to him concerning continued employment, they knew the statements were false because they had already decided to terminate his employment within a 90-day window.  If these allegations are true, they would form a claim of relief that is permitted under Texas law.  Given the stringent standard for dismissal under Rule 12(b)(6), the Court concludes that Archibald has alleged sufficient facts to preclude dismissal at this early stage in the litigation.  As such, the Court recommends the Motion to Dismiss be denied with respect to the fraudulent inducement and negligent misrepresentation claims.

## IV. CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS that the Motion to Dismiss be GRANTED with regards to the breach of contract claim and DENIED with respect to the fraudulent inducement and negligent misrepresentation claims.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written

9

objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13.

Failure to file written objections within the time period mentioned shall bar an aggrieved

party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, on June 11, 2018.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE