United States District Court
Southern District of Texas
**ENTERED**
February 26, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MICHAEL ARCHIBALD | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:17–CV–00286 |
| | § | |
| VIRGINIA TRANSFORMER CORP. | § | |
| and CARAVELS, LLC d/b/a | § | |
| GEORGIA TRANSFORMER | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court is Defendants' Motion for Summary Judgment ("Motion for Summary Judgment").  Dkt. 32.  All dispositive pretrial motions in this case have been referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Dkt. 23.  After reviewing the briefing and applicable law, the Court RECOMMENDS that the Motion for Summary Judgment be GRANTED.

### PROCEDURAL BACKGROUND

Plaintiff Michael Archibald ("Archibald") filed suit against his former employers Defendants Virginia Transformer Corporation and Caravels, LLC d/b/a Georgia Transformer (collectively "Defendants").  In his First Amended Complaint, Archibald asserted three causes of action: breach of contract, fraud in the inducement, and negligent misrepresentation.  At the motion to dismiss stage, the Court dismissed Archibald's breach of contract claim, leaving only the fraud in the inducement and negligent

misrepresentation claims.  These two remaining claims are the subject of Defendants'
Motion for Summary Judgment.

## FACTUAL BACKGROUND

In March 2017, Adecco Staffing, USA ("Adecco"), an employment placement
agency, put Archibald in touch with the Defendants regarding an employment
opportunity.  During the interview process, Archibald claims that one of Defendants'
employees, Jim Hungate ("Hungate"), told him that the position he was applying for—
National Transportation Manager—was a "permanent, full-time position."  Dkt. 34-1 at
19.

In the summer of 2017, after multiple interviews, Defendants extended Archibald
an offer and he accepted a position as the National Transportation Manager.  Archibald
started work on June 25, 2017.  During the onboarding process, Archibald executed three
separate documents explaining that his employment with Defendants was at-will.

Archibald's tenure with Defendants began with training in Idaho.  During training,
Archibald's supervisor was Rakesh Rathi ("Rathi").  Rathi told Archibald that he would
receive work performance reviews after 30 days, 60 days, and 90 days.  After completing
training, Archibald was to relocate and work at the Defendants' facility located in
Rincon, Georgia.  To this end, sometime in July 2017, Archibald put his Pearland, Texas
home on the market for sale.

Around August 2, 2017, Rathi discussed the 30-day work performance review
with Archibald.  A little over two weeks later, on August 18, 2017, Rathi drafted a
memorandum detailing several deficiencies in Archibald's work performance.  Less than

a week later, on August 24, 2017, Rathi informed Archibald that Defendants were not satisfied with his work performance, and consequently, were terminating his employment.   Sometime in between the 30-day review and Archibald's termination, Rathi discussed the 60-day work performance review with Archibald over the phone— though Archibald testified that Rathi was not able to go through the entire review during the call.   The 60-day review, which is included in the summary judgment record, is critical of Archibald's job performance in several respects.

Between Archibald's hire date on June 25, 2017, and his termination on August 24, 2017, Archibald asked Rathi if it would be "okay" for him to "put in to take some leave to move [his] family" following the sale of his Pearland home.   Dkt. 34-1 at 17. Rathi told him, "Okay. Put in for leave."   *Id.* at 18.

Based on these facts, which are explored more fully below, Archibald claims that Defendants are liable for fraud in the inducement and negligent misrepresentation. Specifically, Archibald argues that Defendants, through their agents Hungate and Rathi, misled him by promising continued employment, while all along intending to terminate him before 90 days so they could benefit from his work and avoid paying Adecco a placement fee.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a).   A genuine dispute of material fact does not exist unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Burell v. Prudential*

*Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (citation omitted).  "The moving party . . . bears the initial responsibility of informing the district court of the basis for its motion."  *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (citation omitted).  If the burden of production at trial "ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case."  *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310–11 (5th Cir. 2017).  "Once a party meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial."  *Brandon*, 808 F.3d at 270 (quoting *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010)).  The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.  [It] must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment."  *Id.* (internal quotation marks and citations omitted).  "In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party."  *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 414 (5th Cir. 2018) (internal quotation marks and citations omitted).

## DISCUSSION

### A.  FRAUDULENT INDUCEMENT

"To state a claim for fraudulent inducement under Texas law, a plaintiff must prove the basic elements of fraud."  *Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011).  "The elements of a fraud cause of action under

4

Texas law are: (1) a material misrepresentation; (2) that was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) suffered injury." *ENGlobal U.S. Inc. v. Native Am. Servs. Corp.*, No. H-16-2746, 2018 WL 1877015, at *2 (S.D. Tex. Apr. 19, 2018) (citing *In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001)).  Fraudulent inducement "is a particular species of fraud that arises only in the context of a contract, and the elements of fraud must be established as they relate to an agreement between the parties." *West v. Northstar Fin. Corp.*, No. 2-08-0447-CV, 2010 WL 851415, at *5 (Tex. App.—Ft. Worth Mar. 11, 2010, pet. denied) (citing *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001)).  Although fraudulent inducement has the same elements as common-law fraud, it must also involve "a promise of future performance made with no intention of performing at the time it was made." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015).

Defendants argue that there is no summary judgment evidence showing that their agents Rathi and Hungate made false statements.  Defendants contend that Archibald's fraudulent inducement claim relies on the following oral representations:

> (1) Rakesh Rathi's alleged oral statements to the Plaintiff to go ahead and request leave from work (in response to the Plaintiff's alleged requests to take leave in order to move); [and] (2) Jim Hungate's alleged oral statement

to the Plaintiff during the interview process that the position he was applying for was a "permanent, full-time position" . . . .[1]

Dkt. 32 at 12–13. With respect to the representation made by Rathi, Defendants argue that "assuming for the purposes of summary judgment that Mr. Rathi actually made the statements attributed to him, he simply responded to the Plaintiff's request to take leave and stated for the Plaintiff to put in the request. He did not say anything false." Dkt. 32 at 13. Similarly, with respect to Hungate, Defendants argue that Archibald cannot establish that the "alleged statement that the position was a 'permanent, full-time position'" was false because Archibald "admitted at his deposition that this alleged statement was 'open ended,'" and further, such a statement does not "concern[] a past or present fact." *Id.* at 14 (citation omitted).

The Court has reviewed the deposition testimony presented as summary judgment evidence to ascertain the specific statements purportedly made by Rathi and Hungate. Archibald's deposition testimony is clear that Rathi made only one statement that Archibald believed to be false. In pertinent parts, Archibald testified:

> Q. Basically what I'm hearing you say is you had discussion was Rakesh that needed leave to move?
>
> **A. Yes**
>
> Q. And he said, "Okay. Put in for leave," correct?

---

[1] In their Motion for Summary Judgment, Defendants address two categories of representations upon which Archibald's fraudulent inducement claim presumptively relied: oral statements and written statements contained in the offer letter. Defendants specifically described the written statements as "the Vacation and Time Off section of the offer letter . . . and . . . the Relocation section of the offer letter." Dkt. 32 at 12–13 (internal quotation marks and citation omitted). However, in his response brief, Archibald describes the "[s]pecific [m]isrepresentations by Defendants" as being "[v]erbal misrepresentations." Dkt. 34 at 7. Thus, the Court does not address any of Defendants' arguments pertaining to the written statements.

**A. Correct**

Dkt. 34-1 at 18.  Archibald further explained:

> Q. Okay. And just -- I know I'm just trying to make sure I got it and giving you every opportunity, with Mr. Rathi, what he actually said to you that you believe was false or incorrect is "Go ahead and put in for leave." Is that correct?
>
> . . . .
>
> **A. Yes, that's what I believe-- yeah, that's what I think is incorrect -- or misleading to me.**

*Id.* at 19.

> Archibald's testimony regarding Hungate is equally clear:
>
> > Q. (BY MR. WILCOX) Okay.  All right.  Thank you, sir.  Let me ask the same questions about Mr. Hungate.  Did Mr. Hungate say anything that you believe is false or misleading?
> >
> > . . . .
> >
> > **A. Yes, that this was a permanent position.**
> >
> > . . . .
> >
> > Q. So on the verbal side, Mr. Hungate told you that this was a permanent position?
> >
> > **A. Yes, sir, during the interviewing process.**

*Id*.  When pressed about what exactly a permanent position meant, Archibald testified:

> Q. (BY MR. WILCOX) Okay. You said it was your understanding that you were going to be a permanent employee. What did that -- what did you interpret that to mean?
>
> **A. Full-time, permanent employee after the training -- initial training period of three to six months.**
>
> Q. For how long?
>
> **A. Open-ended.**

*Id.* at 20.

The Court finds that the summary judgment evidence does not reveal any false statements made by Rathi or Hungate.  As argued by Defendants, Rathi merely responded to Archibald's direct inquiries about his need to take leave.  Archibald's attempt to infer that Rathi's response to his inquiries about needing to take leave to handle the sale of his home somehow amounts to a misrepresentation about the status of Archibald's future employment is totally unreasonable and is not supported by the summary judgment record.  Furthermore, Rathi's statement does nothing to overcome the ordinary rule under Texas law that an employer may terminate an at-will employee, such as Archibald, "for any reason or no reason at all, at any time."  *Pierce v. Fondren Orthopedic Grp., LLP*, No. H-18-1686, 2018 WL 6200049, at *3 (S.D. Tex. Nov. 28, 2018) (citing *East Line & R.R.R. Co. v. Scott*, 10 S.W. 99, 102 (Tex. 1888)).  Similarly, Hungate's representation that the position was to be filled on a permanent basis simply does not amount to a guarantee of continued future employment.  Indeed, Archibald testified that he knew and understood that a permanent employee was merely a full-time employee, whose employment duration was open ended.

Moreover, Archibald has not provided any evidence that at the time Rathi and Hungate made the alleged statements, they knew that Archibald would be terminated. The only evidence Archibald attempts to point to is the 60-day performance review and Rathi's declaration.  The 60-day performance review is unpersuasive for several reasons. First, the document is undated: it simply states that the review's observations pertain to the period between July 26 and August 25.  Without a clear date specifying the date the 60-review was completed, the Court cannot possibly infer how the 60-day review might

relate to when Rathi or Hungate knew that Archibald would be terminated. More importantly, the 60-day review says nothing about termination; it just states, like the August 18 memorandum, that Archibald had some performance issues. In other words, the 60-day review contains no facts to suggest that Rathi knew when he told Archibald to request leave that he was going to fire him.

Rathi's declaration is also unhelpful. Archibald offers the following paragraph of Rathi's declaration as evidence of when he knew that Archibald's termination was forthcoming:

> In June 2017, Plaintiff Archibald began training at Defendants' facility located in Pocatello, Idaho. Over the next few months, it became apparent to me and others in management that Mr. Archibald's employment with the company was not going to work out. He was not learning the companies' processes and was not performing, as expected. I provided 30-day and 60-day reviews to the Plaintiff.

Dkt. 32-1 at 53. Regarding the timing of Rathi's knowledge, this statement is far too vague to be of any use to Archibald. This statement, at best, simply amounts to an acknowledgment that sometime during Archibald's employment, Rathi recognized deficiencies in Archibald's work performance. This falls well short of amounting to evidence that Rathi knew that Archibald would be terminated when Rathi told Archibald to "Go ahead and put in for leave."

Further, Archibald has not presented any evidence supporting his claim that Defendants terminated his employment to avoid paying a placement fee to Adecco. To the contrary, Archibald testified that he had no factual basis to support his belief that the Defendants terminated him in order to avoid paying the placement fee to Adecco. *See*

Dkt. 34-1 at 22.  And Rathi expressly denies doing such in his declaration.  *See* Dkt. 32-1 at 53 ("I did not terminate the Plainitfff's employment to avoid paying a placement fee to the employment agency . . . .").[2]

In sum, the summary judgment evidence falls well short of the plausible claim the Court described at the motion to dismiss stage.  *See Archibald v. Virginia Transformer Corp.*, No. 3:17-CV-00286, 2018 WL 3370656, at *4 (S.D. Tex. June 11, 2018) (explaining if "Defendants . . . made . . . misrepresentations to [Archibald] concerning continued employment, [and] they knew the statements were false because they had already decided to terminate his employment" such "[c]ould form a claim of relief that is permitted under Texas law").  Consequently, Archibald's fraudulent inducement claim fails.

## B.   NEGLIGENT MISREPRESENTATION

Under Texas law, the elements of negligent misrepresentation are: "(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the

---

[2] In their reply brief, Defendants objected to Archibald's declaration on three grounds: (1) Archibald's declaration that "Defendants' alleged representations of 'future employment' and . . . that his employment 'would continue'" is "vague, ambiguous and conclusory . . . irrelevant, illusory[,] and do[es] not support Plaintiff's causes of action"; (2) Archibald's "declaration that Rathi responded that the Plaintiff should put in the request for leave 'with his own full knowledge that I was about to be terminated' . . . calls for speculation, and Plaintiff fails to lay any foundation how he was aware of Rathi's thought process"; and (3) Archibald's declaration "that that he 'spoke with a representative of Adecco in approximately April or May of 2018 . . . and was told that Defendants still had not paid the placement fee for his referral' . . . is hearsay, and is being offered to prove the truth of the matter asserted."  Dkt. 35 at 3–4 (citations omitted).  The Court agrees with Defendants objections and strikes the offending portions of Archibald's declaration.

guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *LHC Nashua P'ship, Ltd. v. PDNED Sagamore Nashua, L.L.C.*, 659 F.3d 450, 458 n.8 (5th Cir. 2011) (quoting *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).  "Because every element of a negligent misrepresentation claim must be established in order for there to be recovery, the absence of any element is grounds for summary judgment." *Miksch v. Exxon Corp.*, 979 S.W.2d 700, 706 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (citing *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex. 1977)).

"The 'false information' contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct." *Roof Sys., Inc. v. Johns Manville Corp.*, 130 S.W.3d 430, 439 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied)).  "A promise to act or not to act in the future cannot form the basis of a negligent misrepresentation claim." *Id.* (citing *Miksch*, 979 S.W.2d at 706).  "The plaintiff must prove that the defendant misrepresented an existing fact in the course of the defendant's business." *Id.* (citation omitted).  Deciding whether a statement is a promise of future conduct, rather than an existing fact, is a matter of law. *See id.*

A defendant may misrepresent an existing fact by omission. *See Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 384 (Tex. App.—Houston [1st Dist.] 2010).  "Where there is a duty to speak, silence may be as misleading as a positive misrepresentation of existing facts." *Id.* (quoting *Smith v. Nat'l Resort Communities.,*

*Inc.*, 585 S.W.2d 655, 658 (Tex. 1979)).  "A duty to disclose may arise in four situations: (1) when there is a fiduciary relationship; (2) when one voluntarily discloses information, the whole truth must be disclosed; (3) when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; and (4) when one makes a partial disclosure and conveys a false impression." *Id.* (citation omitted).  Deciding whether a duty to disclose exists is a matter of law.  *See id.* (citing *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001)).

Archibald's claim fails for two reasons.  First, as explained above, Rathi's and Hungate's statements were not false.  Second, to the extent that Rathi's and Hungate's statements could constitute deceit regarding Archibald's continuation of employment, such statements would necessarily be promises of future conduct rather than statements of existing fact.  *See, e.g., Swank v. Sverdlin*, 121 S.W.3d 785, 802–03 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (holding oral promises not to fire plaintiff, not to take control of AMPS, and not to exercise stock options were promises of future conduct, not existing fact); *Miksch*, 979 S.W.2d at 706 (holding alleged oral promise not to terminate plaintiff was not misrepresentation of existing fact but was promise to refrain from taking action in future).  "A promise to act or not to act in the future cannot form the basis of a negligent misrepresentation claim."  *Roof Sys., Inc.*, 130 S.W.3d at 439 (citation omitted).  For this reason alone, Archibald's negligent misrepresentation claim must fail.  This is so even if Archibald is attempting to argue that Rathi's and Hungate's statements constitute misrepresentations of an existing fact by omission because any potential omission would still be related to future conduct, as opposed to existing facts.

12

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS that the Motion for Summary Judgment be GRANTED.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, on February 26, 2019.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE